UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**CLAY TAYLOR**, and<br>**KAREN LEE TAYLOR**,<br><br>Debtors. | Case No. **08-60493-12** |

## *MEMORANDUM of DECISION*

At Butte in said District this 23rd day of October, 2008.

In this Chapter 12 bankruptcy, after due notice, a hearing was held October 21, 2008, in Billings on confirmation of Debtors' Chapter 12 Plan filed August 7, 2008, and on the Chapter 12 Trustee's Motion to Dismiss filed September 19, 2008, wherein the Trustee seeks the dismissal of this case for Debtors' failure to timely insure their property and file all their income tax returns due through the tax year ending December 31, 2007. The Chapter 12 Trustee, Dennis Hoeger of Bozeman, Montana appeared at the hearing; Debtors were represented by their counsel of record, Richard O. Harkins of Ekalaka, Montana; and the United States of America, Farm Service Agency ("FSA"), was represented by Assistant United States Attorney Victoria L. Francis, of Billings, Montana. Debtor Karen Taylor ("Karen") and Dave Pitts of FSA testified and FSA's Exhibits B, C and D were admitted into evidence without objection.

The Chapter 12 Trustee noted at the commencement of the hearing that Debtors had,

since September 19, 2008, provided the Trustee with proof of insurance and had filed their tax returns.  Thus, the Trustee withdrew his Motion to Dismiss.  The Trustee noted, however, that Debtors had not filed an amended Chapter 12 plan, despite the fact that the Court entered an Order on August 21, 2008, directing that any amendments to Debtors' Chapter 12 plan were to be filed by September 11, 2008.

By way of background, Debtors filed a prior Chapter 12 bankruptcy case on September 21, 2007, but that case was dismissed on December 11, 2007, for Debtors failure to timely file their schedules and statement of financial affairs and for Debtors' failure to appear at their 341(a) meeting of creditors.  Debtors then commenced the instant Chapter 12 bankruptcy on April 30, 2008, in order to stop a foreclosure sale that was scheduled for May 1, 2008.

FSA's Exhibits B, C and D are copies of Debtors' 2005, 2006 and 2007 income tax returns.  Debtors' tax returns and Debtors' cash flow projections for years 1 through 5 show the following income and expense items:

|  | 2005 | 2006 | 2007 | Projected |
|---|---|---|---|---|
| Clay Taylor Wages | 30,330.00 | 40,729.00 | 46,078.00 | 40,000.00 |
| Profit and Loss From Farming: | | | | |
|     Farm Income -pasturing livestock | 53,020.00 | 49,850.00 | 49,422.00 | 49,000.00 |
|     Farm Expenses: | | | | |
|         Feed | 15,250.00 | 16,560.00 | 16,935.00 | 17,000.00 |
|         Gasoline, Fuel, etc. | 7,530.00 | 8,240.00 | 7,650.00 | 12,000.00 |
|         Insurance | 1,300.00 | 1,680.00 | 950.00 | 1,800.00 |
|         Labor hired | 2,240.00 | 2,530.00 | 2,750.00 | 0.00 |
|         Rent or lease of vehicle/equip | 2,228.00 | 2,560.00 | 2,317.00 | 4,000.00 |
|         Rent or lease of other | 2,530.00 | 3,495.00 | 2,675.00 | |

| | | | | |
|---|---:|---:|---:|---:|
| Supplies | 3,625.00 | 3,683.00 | 3,355.00 | |
| Taxes | 1,532.00 | 1,848.00 | 1,822.00 | 2,000.00 |
| Utilities | 4,355.00 | 6,056.00 | 6,352.00 | 6,000.00 |
| Veterinarian, breeding, meds | 4,530.00 | 5,230.00 | 4,950.00 | 600.00 |
| Livestock Expense | 8,195.00 | 4,187.00 | 3,700.00 | |
| Office Expense | 1,095.00 | 1,310.00 | 1,530.00 | |
| Repairs | | | | 3,000.00 |
| Total Farm Expenses | 54,410.00 | 57,379.00 | 54,986.00 | 46,400.00 |
| Net Farm Profit or (Loss) | (1,391.00) | (7,529.00) | (5,564.00) | 2,600.00 |

In addition to the foregoing, Debtors' five year cash-flow analysis reflects that Debtors will spend approximately $22,800.00 on living expenses. Subtracting $22,800.00 from Clay Taylor's wages of $40,000.00 and Debtors' projected farm profit of $2,600.00 leaves Debtors with $19,800.00 with which to make their proposed Chapter 12 plan payment of $19,355.00, thus leaving Debtors with a cash reserve of $445.00 each of the 5 years.

Debtors' real property is valued by Debtors at $540,000.00. The property is encumbered by a secured obligation owed to FSA in the amount of $408,383.33 as reflected on Proof of Claim No. 5 filed by FSA on August 18, 2008. The obligation originated in 1979. Debtors have not made a voluntary payment on the obligation owed to FSA since 1998 but FSA received an offset payment in 2001. FSA reamortized Debtors' obligation in 1983, 1985 and 1990. FSA has also done one write-down of the obligation. FSA regulations do not permit a second write-down. FSA also granted Debtors' a one year deferral of the obligation in 1997.

Karen testified that Debtors run approximately 20 yearlings, 8 bulls and 100 cows on their property. All the cattle belong to Debtors' children but Debtors' children supposedly permit

3

Debtors to breed the cattle, sell the calves and keep the proceeds. Debtors did not offer any evidence that would show their agreement with their children regarding the cattle but Karen testified that she sold the 2008 calves on Saturday, October 18, 2008, for a price of approximately $40,200.00. From the proceeds of the sale, Karen brought with her to the hearing a cashier's check in the amount of $17,000.00, with which to make Debtors' first plan payment of $19,323.39 due on or before December 10, 2008.

Finally, Debtors' proposed Chapter 12 Plan provides that the "principal due FSA is reamortized over 30 years at 5% interest and payments are made each December." Debtors' proposed plan further provides that "[i]nsufficient projected earnings are available to reamortize the entire debt to FSA, so the full judgment is divided into two funds; the interest accrued to date, ($146,700), and the Principal due on the mortgage, ($259,135.89). Interest is set aside for the five year plan and at the end of the plan is reamortized with the remaining principal for the period of 25 years." FSA objects to Debtors' proposed treatment of its claim and Dave Pitts testified that if FSA's obligation of $408,383.33 was re-amortized over 30 years at an interest rate of 5%, Debtors would have to make annual payments of roughly $26,740.00.

Confirmation of Chapter 12 Plans is governed by 11 U.S.C. § 1225, and the facts as set forth above show that Debtors' Chapter 12 Plan fails to comply with the following subsection:

(a) Except as provided in subsection (b), the court shall confirm a plan if —

(5) with respect to each allowed secured claim provided for by the plan–

    (A) the holder of such claim has accepted the plan;

    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

4

>       (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
>
>    (C) the debtor surrenders the property securing such claim to such holder; and
>
> (6) the debtor will be able to make all payments under the plan and to comply with the plan[.]

Under § 1225(a)(5), unless the creditor accepts the plan or the debtor surrenders the collateral to the creditor, the creditor is guaranteed that property distributed under a plan on account of a claim will equal the present dollar value of such claim as of the confirmation date. Thus, while only oversecured creditors are entitled to pre-confirmation interest to the extent of the value of the collateral by virtue of § 506(b), all secured creditors holding allowed secured claims, as defined at 11 U.S.C. § 506(a), are entitled to post-confirmation interest--i.e., an amount which will provide creditors with the present value of their allowed secured claims. *Rake v. Wade*, 508 U.S. 464, 473, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993) (interpreting the same language as applied in the context of Chapter 13 cases under § 1325(a)(5)).

Notwithstanding § 1225(a)(5), Debtors argued that if Congress could enact the $700 billion Emergency Economic Stabilization Act to shore up the United States troubled economy, Debtors should certainly be entitled to separate accrued interest of $146,700 from FSA's claim and provide for such claim after the conclusion of Debtors' Chapter 12 Plan. While Debtors' argument may be logical, it fails to address the direct mandate of the Bankruptcy Code that Debtors' provide for FSA's claim in full. To provide for FSA's claim in full, over a period of 30 years, Debtors must pay FSA $26,740.00 annually. Debtors' proposed plan payments fall woefully short of $26,740.00.

The Court also finds that Debtors' Plan does not meet the feasibility requirements set forth in § 1225(a)(6). While economic certainty is not a necessary element of feasibility, courts cannot confirm plans that are purely "visionary," *Pizza of Hawaii, Inc. v. Shakey's, Inc. (Matter of Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985). This Court fashioned the test for feasibility under Chapter 12 on a prior occasion as thus:

> [T]he benefit of the doubt in Chapter 12 cases will be given to farmers, if it appears that a reasonable chance of meeting their payments as projected under a plan [sic].

*In re Rugg*, 8 Mont. B.R. 457 (Bankr. D.Mont. 1990) (quoting *In re Hansen*, 77 B.R. 722 (Bankr. N.D. 1987)). Debtors have the burden of proving that their Plan has a reasonable chance of success. *See In re Martin*, 66 B.R. 921, 926 (Bankr. D.Mont. 1986).

In the case *sub judice*, Debtors' evidence lacks historic support and current reality. Exclusive of their farming expenses, Debtors' Schedule J shows that Debtors' monthly expenses total $6,014.00, with food alone being $18,720.00 annually. The Court would agree that there are other expenses on Debtors' Schedule J that may be attributable to their farming operation, such as repairs and maintenance of $330.00 per month, labor of $229.00 per month, and transportation of $825.00 per month (although Clay Taylor will still have to travel to and from his employment ), but excluding these amounts still leaves Debtors' with annual current expenditures of $55,560.00, which amount more than doubles Debtors' projected living expenses of $22,800.00 per year. Karen's explanation for how Debtors proposed to cut their monthly living expenses so drastically was simply that Debtors would cut back on their spending.

In addition, Debtors' project that their gross income from farming operations will be $49,000.00 per year, yet Karen testified that Debtors' gross farming income in 2008 was only

$40,200.00; $8,800.00 less than projected by Debtors in August of this year.  Finally, Debtors project that their farming expenses will be $46,400.00, when the historic three year average for such expenses has been $55,591.67.  Once again, Karen simply stated that Debtors would cut back on such things as their veterinarian bill and Debtors would eliminate their hired labor expense and livestock expense.

      Debtors have simply failed to present this Court with any credible evidence that would allow this Court to ignore Debtors' historical income and expense numbers and adopt numbers that have no historical basis.  The Court would note that Debtors' expenses were massaged to support Debtors' proposed Chapter 12 plan payment of $19,355.00 as reflected on Debtors' cash flow projections.  However, Debtors concede that they simply cannot fashion a Chapter 12 Plan that would pay FSA what it is entitled under § 1225(a)(5).  Sadly, the evidence in this case reveals that the Chapter 12 plan will not afford the Debtors the relief they seek, unless Debtors propose a liquidation plan that perhaps takes advantage of the Bankruptcy Code's favorable treatment of certain tax consequences.  For the reasons discussed herein, the Court will enter a separate order providing as follows:

      IT IS ORDERED that confirmation of Debtors' Chapter 12 Plan filed August 7, 2008, is DENIED; Debtors shall have through **November 3, 2008**, to file a Chapter 12 plan of liquidation; and a hearing on confirmation of Debtors' liquidating plan shall be held **Tuesday, November 18, 2008, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

      IT IS FURTHER ORDERED that if Debtors fail to file a liquidating plan by November 3,

7

2008, this Chapter 12 bankruptcy case will be dismissed without further notice or hearing.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana